UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD F. MARTINEZ,

          Plaintiff,

    v.

W. L. MUNIZ, et al.,

          Defendants.

Case No. 14-cv-03753-HSG (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS**

Re: Dkt. No. 62

## INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at Salinas Valley State Prison ("SVSP") filed this *pro se* civil rights action under 42 U.S.C. § 1983. The operative pleading is Plaintiff's First Amended Complaint ("FAC"), which the Court screened on July 8, 2015. The Court found that, liberally construed, the FAC alleges that SVSP Defendants Muniz, Martella, Medina, Hatton, Barela, and Mojica retaliated against Plaintiff, in violation of the First Amendment, by improperly screening or otherwise impermissibly interfering with the processing of Plaintiff's prison grievances. Now before the Court is Defendants' motion to dismiss and for summary judgment. Plaintiff has filed an opposition, and Defendants have filed a reply.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

### I.    Prisoner Grievances at California Department of Corrections and Rehabilitation's ("CDCR") Institutions

#### A.    CDCR's Written Request Process for Interviews, Items and Services

Inmates may request interviews with staff and/or request items and services via a written request process. Cal. Code Regs. tit. 15, § 3086(a). The purpose is to provide timely resolution of routine matters through an effective and nonconflictive communication process. *Id.* This process may be used when an inmate seeks a response to an issue or concern related to his or her

confinement. *Id.* at § 3086(b).  To initiate the process, an inmate must submit a CDCR Form 22, Inmate/Parolee Request for Interview, Item or Service. *Id.* at § 3086(c).

Within three working days of receipt of the Form 22, the responding employee shall: "(A) Note his or her decision or action on the form; (B) Sign and date the form; (C) Retain a copy for his or her records; [and] (D) Return the original and remaining copy of the form to the inmate or parolee." *Id.* at § 3086(f)(4).  If the inmate is dissatisfied with or disagrees with the staff member's response, he may submit the Request for Interview, Item or Service form to the employee's supervisor for review. *Id.* at § 3086(g).  Within seven working days of receiving the Request for Interview, Item or Service form, the supervisor shall: "(1) Indicate a decision or action on the form; (2) Sign and date the form; (3) Ensure a copy is made and retained in the facility records for a period no less than prescribed for inmate correspondence in the approved departmental records retention schedule; and (4) Return the original to the inmate or parolee." *Id.* at § 3086(h).

**B.      CDCR's Administrative-Appeals Grievance Process**

Separately, CDCR provides an administrative-appeals grievance process by which inmates can grieve any departmental policy decision, action, condition, or omission that is adversely affecting an inmate's welfare. *Id.* at § 3084.1.  Inmates seeking to resolve their grievances through the inmate-appeals process must submit a Department Form 602 describing the problem and relief requested. *Id.* at § 3084.2(a).  Grievances must be submitted within thirty calendar days of the event complained of or the inmate's first having knowledge of the event. *Id.* at § 3084.8(b)(1)-(2). Section 3084.7 of Title 15 of the state code of regulations ("the regulations") describes the levels of review available to an inmate: the first, second, and third levels of appeal.

All inmate grievances are subject to initial screening prior to acceptance and assignment for review. *Id.* at § 3084.5(b).  If the grievance is not accepted (i.e., "screened out"), the inmate is notified of the specific reason(s) for the rejection or cancellation of the grievance and of the correction(s) needed for the grievance to be accepted. *Id.* at § 3084.5(b)(3).  The appeals coordinator shall provide clear and sufficient instructions regarding further actions the inmate must take to qualify a rejected grievance for processing. *Id.* at § 3084.6(a)(1).  A grievance that is

rejected may later be accepted if the reason noted for rejection is corrected and the grievance is timely returned. *Id.* at § 3084.6(a)(2).  A cancelled grievance may later be accepted if it is determined that the cancellation was in error or if new information is received making the grievance eligible for further review. *Id.* at § 3084.6(a)(3).  But any grievance can be accepted under exceptional circumstances. *Id.* at § 3084.6(a)(4).  Grievances can be rejected or cancelled for a variety of reasons. *See id.* at § 3084.6(b)-(c).

### C.      CDCR's Staff Complaint Process

"When [a grievance] is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard that could be considered misconduct . . . the matter shall be referred . . . to determine whether it shall be:

(A) Processed as a routine [grievance] but not as a staff complaint[;]

(B) Processed as a staff complaint appeal inquiry[;]

(C) Referred to Internal Affairs for an investigation/inquiry."

*Id.* at § 3084.5(b)(4)(A)-(C).  A staff complaint filed by an inmate shall be processed as a grievance. *Id.* at § 3084.9(i).  An inmate alleging staff misconduct by a departmental employee shall forward the grievance to the appeals coordinator. *Id.* at § 3084.9(i)(1).  Only after the grievance is reviewed and categorized as a staff complaint by the hiring authority or designee at a level not below Chief Deputy Warden, Deputy Regional Parole Administrator, or equivalent level, shall it be processed as a staff complaint. *Id.*  If the hiring authority makes a determination that the grievance shall not be accepted as a staff complaint, it shall be processed as a routine grievance under subsection 3084.5(b)(4)(A). *Id.*

### D.      SVSP's Appeals Office

The SVSP appeals office is charged with screening, logging, and routing first- and second-level grievances that are submitted by inmates at SVSP.  Medina Decl. ¶ 3; Barela Decl.  ¶ 3; Martella Decl. ¶ 3; Mojica Decl. ¶ 3.  The appeals office also monitors the disposition of these inmate grievances. *Id.*  The formal inquiry and review of such grievances are performed and determined by other CDCR staff as designated under section 3084.7 of the regulations. *Id.*

Defendant Martella is a staff services analyst ("SSA") in SVSP's Appeals Office. Martella Decl. ¶ 1. She has held that position since May 31, 2013. *Id.* Her duties include screening inmate grievances at the first and second levels of review. *Id.* Martella is not involved in the subsequent formal grievance inquiry and/or review process. *Id.* at ¶ 3.

## II.    Plaintiff's Civil Actions and Administrative Grievances at SVSP

### A.    Plaintiff's Prior Civil Actions

Plaintiff has previously brought two separate actions in federal district court—*Martinez v. Evans*, C 08-5293 CRB (N.D. Cal.) and *Martinez v. Grounds*, 13-0256 CRB (N.D. Cal.)—in which he alleged civil rights violations by SVSP prison officials. FAC at 4.[1] Both actions settled. *Id.*

### B.    Inmate Appeal No. SVSP-L-13-05291

On September 30, 2013, Plaintiff submitted grievance log number SVSP-L-13-05291. FAC at 4. At the time, Facility B, where Plaintiff was housed, was on a modified program while staff conducted a search for missing kitchen equipment. Ochoa Decl. Ex. B. Plaintiff requested that Facility B return to regular program status and requested that no retaliation be taken against him for submitting the grievance. *Id.*

This grievance was initially screened out and rejected by Martella on or about October 1, 2013 under section 3084.6(b)(13) of the regulations. *Id.* Martella determined that Plaintiff was attempting to submit a group grievance but had failed to submit the grievance on the proper form. *Id.* Plaintiff challenged the rejection and resubmitted the grievance. FAC at 5; Ochoa Decl. Ex. B. Upon Plaintiff's resubmission, the grievance was accepted for a first-level review and was ultimately processed all the way through third-level review. Ochoa Decl. Ex. B.

### C.    Inmate Appeal No. SVSP-L-13-06278

On December 2, 2013, Plaintiff submitted grievance log number SVSP-L-13-06278. FAC at 6. Plaintiff alleged that on November 5, 2013, he received an order from the Court requesting a

---

[1] Page number citations for Plaintiff's filings refer to those assigned by the Court's electronic filing system and are located at the top right-hand corner of each page.

United States District Court
Northern District of California

response by a prescribed deadline.  Ochoa Decl. Ex. C.  Approximately two days later, Plaintiff presented the court order to B-yard facility librarian S. Lew and applied for Priority Legal User ("PLU") status at the library.  *Id.*  Plaintiff claimed that the processing of his application took approximately two weeks and Plaintiff was unable to physically access the library until November 22, 2013.  Plaintiff claimed that new PLU procedures caused unnecessary delay in the request and sought a return to the previous PLU procedures.  *Id.*  Plaintiff also requested that prison library technicians approve/verify inmate court filing deadlines.  *Id.*

This grievance was initially screened out and rejected by Martella on or about December 4, 2013 under section 3084.6(b)(13) of the regulations.  *Id.*  Martella determined that the grievance was incomplete and should be returned to Plaintiff because Plaintiff may only file a grievance on behalf of himself—not seek a change in the PLU rules for all inmates—because PLU status is individually determined for each inmate.  *Id.*  Plaintiff challenged the rejection and resubmitted the grievance.  FAC at 6-7; Ochoa Decl. Ex. C.  Upon Plaintiff's resubmission, the grievance was accepted and partially granted at the first level of review.  Ochoa Decl. Ex. C.  Plaintiff did not submit the grievance for a second-level review.  Medina Decl. Ex. A; Voong Decl. Ex. A.

### D.    Inmate Appeal No. SVSP-L-13-6387

On November 17, 2013, plaintiff submitted a grievance alleging deprivation of out-of-cell exercise during the course of two modified programs.  FAC at 5.  On December 1, 2013, Plaintiff submitted a Form 22 requesting the status of the appeal.  *Id.*  On December 2, 2013, Defendant Medina, an appeals coordinator at SVSP, responded to the Form 22 by informing Plaintiff that the appeals office never received the grievance.  *Id.*  On December 9, 2013, Plaintiff resubmitted the grievance, which was accepted for review and logged as SVSP-L-13-6387.  *Id.*  The grievance was ultimately processed all the way through third-level review.  Ochoa Decl. Ex. D.

### E.    Inmate Appeal No. SVSP-L-14-00034

On November 24, 2013, a group grievance, log number SVSP-L-14-00034, was submitted.  FAC at 7.  Plaintiff assisted the lead inmate, Inmate Rodriguez, in preparing the grievance.  *Id.*  The inmates claimed that Facility B Southern Hispanic inmates were subjected to discriminatory practices and cruel and unusual punishment by nondefendants Facility B Captain Solis and SVSP

1    Warden Grounds.  Ochoa Decl. Ex. E.  The inmates sought an end to the alleged discriminatory

2    practices of race-based modified programs and modified programs based on unreliable,

3    uncorroborated information; the deprivation of outdoor exercise and alternative out-of-cell

4    exercise; reinstatement of contact visits, canteen, telephone calls, and library access; and other

5    unspecified privileges for "critical workers."  *Id.*

6        This grievance was initially screened out and cancelled by Martella on December 9, 2013

7    under section 3084.6(f) of the regulation.  *Id.*  Martella determined that all inmate signatories

8    except Rodriguez had either transferred to another prison or had agreed to withdraw the grievance.

9    *Id.*  Martella also advised Rodriguez that he may not submit a group staff complaint and that each

10   of the inmates had to submit a separate grievance describing the incident(s) pertaining to himself.

11   *Id.*

12       On December 11, 2013, with Plaintiff's assistance, Inmate Rodriguez challenged the

13   cancellation, stating in pertinent part:

14       C. Martella, your "cancellation" of the group appeal is in serious error.  NOT one i/m in
         the group appeal has purportedly "withdrawn the appeal . . ." and or if an i/m has

15       transferred it does not affect the group appeal since the primary appellant and the next i/m
         are still in SVSP fac.B the appeal is mandated to proceed.  see CCR § 3084.2(h)(3).  your

16       continued action(s) of constructing and falsifying reason(s) to " cancel/screen-out"
         appeal(s) that are not supported by CCR § or D.D.O.M is not well taken and an obvious

17       attempt to hinder the processing the appeal and shield SVSP officials from the appeals
         allegation(s).  nowhere in the group appeal are appellants alleging "staff misconduct"

18       pursuant to CCR § 3084.9(i).  So where do you get this from???

19   Ochoa Decl. Ex. E; FAC at 8.

20       On December 13, 2013, with Plaintiff's assistance, Inmate Rodriguez submitted a staff

21   complaint appeal alleging that Martella had fabricated reasons to cancel the group grievance.

22   FAC at 8.  Plaintiff and Rodriguez attached the group grievance, the December 9, 2013

23   cancellation of the group grievance, and the December 11, 2013 challenge to the cancellation.  *Id.*

24        On December 16, 2013, Martella returned the group grievance that had been attached as a

25   supporting document to the staff complaint against her.  FAC at. 9.  Martella rejected the group

26   grievance, this time relying on section 3084.6(b)(13) of the regulations.  Ochoa Decl. Ex. E.

27   Martella noted that the grievance was categorized as a staff complaint and determined that it was

28

United States District Court
Northern District of California

United States District Court
Northern District of California

incomplete.  *Id.*  The December 13, 2013 staff complaint was missing as was Martella's December 9, 2013 cancellation, which included the challenge to that cancellation.  FAC at 9.

On December 18, 2013, Inmate Rodriguez withdrew as the lead inmate on the group grievance.  FAC at 10.  Plaintiff replaced him as lead inmate and, on December 19, 2013, challenged Martella's December 16, 2013 rejection.  *Id.*  On January 2, 2014, Plaintiff was informed by Medina that the grievance had been accepted for first-level review.  Ochoa Decl. Ex. E.  The grievance was then processed through the second level of review.  *Id.*  Plaintiff's third-level submission was cancelled because he failed to submit the grievance for a third-level review within the time constraints allowed under section 3084.8(b) of the regulations.  *Id.*  Plaintiff did not challenge this determination.  *Id.*

**F.   Inmate Appeal No. SVSP-L-13-6738**

On December 25, 2013, Plaintiff submitted grievance log number SVSP-L-13-06738.  FAC at 13.  Plaintiff claimed that nondefendant staff member Grady erroneously refused to release Plaintiff to work his B3 porter job.  Ochoa Decl. Ex. F.  Plaintiff sought to be released to work with the other B3 porters, and asked that Grady be reassigned and that Plaintiff not be retaliated against for bringing the grievance.  *Id.*  This grievance was not screened out at first-level review.  *Id.*

According to Plaintiff, the grievance was initially categorized as a "staff complaint" but was later changed to a "work incentive issue."  FAC at 13.  On January 26, 2014, nondefendant Sergeant N. Scarlett conducted the first-level review interview with Plaintiff and informed him that the grievance was related to a work incentive issue.  *Id.*  Plaintiff told Sgt. Scarlett that he did not submit a work incentive grievance but a staff misconduct complaint.  *Id.*  Sgt. Scarlett informed Plaintiff that he was instructed by the appeals office that the grievance was being processed as a "work incentive" issue only.  *Id.*  The grievance was ultimately processed all the way through third-level review.  *Id.*  In the first-level response, Plaintiff was advised that: "[T]his appeal is being processed only as a work incentive appeal. . . .  All other issues the appellant may have will need to be addressed and appealed separately and are not addressed in this appeal."  *Id.*

**G.   Inmate Appeal No. SVSP-L-14-01067**

1       Pursuant to the instructions in the first-level response in SVSP-L-13-06738, on February

2  23, 2014, Plaintiff filed a separate grievance alleging staff misconduct by staff member Grady.

3  FAC at 14.  On February 26, 2014, Martella issued the log number SVSP-L-14-1067 for the

4  grievance and rejected it on the ground that Plaintiff failed to sign and date one of the three

5  signature blocks on the form.  *Id.*

6       On February 27, 2014, Plaintiff resubmitted the staff complaint.  FAC at 15.

7  Approximately two weeks after not receiving an assignment notice, on March 16, 2014, Plaintiff

8  submitted Form 22 requesting the status of the staff complaint.  *Id.*  After still not receiving a

9  response, Plaintiff submitted a second Form 22 on April 6, 2014, again requesting the status of the

10  staff complaint.  *Id.*  On April 19, 2014, Martella responded to the second Form 22, stating:

> Your appeal was screened out on 2/26/14 and returned to you.  As of today the appeals
> tracking system does not show that it was re-submitted.

*Id.*  The Form 22 was returned to Plaintiff wrinkled, as if it had been crumpled up for the garbage

and then later smoothed out.  *Id.*  Plaintiff resubmitted the April 6, 2014 Form 22 asking for a

supervisor review.  FAC at 15; Martinez Decl. Ex. A.  He never received a response.  *Id.*

### H.     Inmate Appeal No. SVSP-L-14-00063

      On December 30, 2013, Plaintiff submitted grievance log number SVSP-L-14-00063.

FAC at 16.  In this grievance, Plaintiff challenged Martella's acts of removing documents from

inmate appeals and fabricating reasons to reject inmate appeals.  Ochoa Decl. Ex. H.  He requested

that Martella no longer process his appeals and that she be removed from the SVSP Appeals

Office.  *Id.*  The grievance was ultimately processed all the way through third-level review.  *Id.*

### I.     Inmate Appeal No. SVSP-L-14-01842

      According to Plaintiff, on March 16, 2014, he submitted a staff complaint against

Defendant Muniz, chef deputy warden at SVSP during the relevant time period.  FAC at 18.

Therein, Plaintiff alleged that Muniz erroneously categorized new inmate grievances in an effort to

protect SVSP officials from investigations and findings of misconduct.  *Id.*  Plaintiff requested that

the grievance be processed as a staff complaint, that the grievance not be processed by Muniz, and

that he not be retaliated against for bringing the grievance.  *Id.*

United States District Court
Northern District of California

1    According to Plaintiff, on March 25, 2014, he submitted a Form 22 to nondefendant

2  Warden Grounds requesting the status of the staff complaint against Muniz.  *Id.*  On April 2, 2014,

3  Martella responded to the Form 22 stating that the appeals office never received the staff

4  complaint.  FAC at 19.  On the same date, Plaintiff resubmitted the Form 22, this time requesting

5  supervisor review.  *Id.*  He never received a response.  *Id.*  On April 13, 2014, Plaintiff submitted a

6  second Form 22 requesting Warden Grounds' assistance in determining the status of the staff

7  complaint.  *Id.*

8    The parties agree that on April 29, 2014, Defendant Barela, who worked in the appeals

9  office at the time, responded to the Form 22 of April 13, 2014.  FAC at 19, 73-74; Medina Decl. ¶

10  17 & Ex. E.  Barela informed Plaintiff that the appeals office had no record of the staff complaint.

11  *Id.*  However, Barela accepted the Form 22 as a staff complaint and issued it log number SVSP-L-

12  14-01842.  *Id.*  Thereafter the Form 22 was rejected as an inmate grievance because it was not

13  submitted on a CDCR Form 602.  *Id.*  Barela instructed Plaintiff on the procedures to correctly

14  submit a staff complaint.  *Id.*

15    **J.    Plaintiff's April 27, 2014 Complaint Submission**

16    According to Plaintiff, on April 27, 2014, he submitted a second staff complaint against

17  Muniz, making the same allegations asserted in his March 16, 2014 submission.  FAC at 20-21,

18  76-84.  On May 18, 2014, Plaintiff submitted a Form 22 to Martella requesting the status of the

19  staff complaint.  *Id.*  Plaintiff never received a response.  *Id.*

20    **K.    Plaintiff's April 30, 2014 Grievance Submission**

21    According to Plaintiff, on April 30, 2014, he submitted a grievance alleging that

22  nondefendant correctional counselor Johnson had failed to schedule Plaintiff for his annual

23  Institutional Classification Committee review.  FAC at 21, 86-88.  He never received a response.

24  *Id.*  According to Defendants, Plaintiff "resubmitted" the grievance on May 18, 2014, and it was

25  processed from there.  Mot. Summ. J. at 13-14.  Defendants never explain, however, what

26  happened to Plaintiff's April 30, 2014 submission and neither admit nor deny having received it.

27  *See id.*

28

United States District Court
Northern District of California

**DISCUSSION**

**I.      Motion to Dismiss**

Defendants first move to dismiss all claims brought against them in their official capacities.  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Unless waived, the Eleventh Amendment bars a federal court award of damages against a state, state agency, or state official sued in an official capacity.  *Graham*, at 169.  There has been no waiver here.  Further, Plaintiff does not oppose Defendants' motion to dismiss the official capacity claims.  *See* Opp'n (dkt. no. 91-1) at 27.

Accordingly, Defendants' motion to dismiss the official capacity claims is GRANTED, and the claims against Defendants in their official capacities for money damages are dismissed with prejudice.  Plaintiff's surviving claims for damages as brought against Defendants in their individual capacities are unaffected by this ruling.  Further, to the extent Plaintiff's surviving claims for injunctive relief are brought against Defendants in their individual and official capacities, such claims are also unaffected by this ruling.  *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989) ("a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'") (quoting *Graham* at 167 n.14).

**II.     Motion for Summary Judgment**

      **A.      Legal Standard for Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).  Here, plaintiff's verified FAC is considered along with the evidence in his opposition (dkt. no. 91) in evaluating the motion for summary judgment.

## B.     Failure to Exhaust

Defendants argue that Plaintiff failed to exhaust his administrative remedies on his retaliation claims as to all Defendants except for Martella.

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

United States District Court
Northern District of California

United States District Court
Northern District of California

1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Although previously within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules."  *Id.* at 90.  Administrative remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  *Porter*, 534 U.S. at 524.  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Exhaustion is a prerequisite to all inmate lawsuits pertaining to prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter*, 534 U.S. at 532.

The exhaustion requirement of the PLRA is intended to serve a number of purposes, including providing an opportunity for corrections officials to address complaints internally, deterring frivolous lawsuits, and creating an administrative record allowing courts to evaluate the relative merits of claims.  *See Porter*, 534 U.S. at 525.  "The primary purpose of a grievance," however, "is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations").

In *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), the Ninth Circuit held that a failure to exhaust under § 1997e(a) should be raised by a defendant as an "unenumerated Rule 12(b) motion."  Thereafter, however, in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the Ninth Circuit overruled *Wyatt* in part and held that a motion for summary judgment is the appropriate procedural device for pretrial determination as to exhaustion.  *Albino*, at 1169.  Following the

1    decision in *Albino*, a defendant may raise the issue of exhaustion in either (1) a motion to dismiss

2    pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the

3    complaint, or (2) a motion for summary judgment.  *Id.*

4           As noted above, the State of California provides its inmates the right to administratively

5    appeal "departmental policies, decisions, actions, conditions, or omissions that have a material

6    adverse effect on the welfare of inmates and parolees."  Cal. Code Regs. tit. 15, § 3084.1 (2014).

7    A final decision at the third level of review (also known as the director's level) satisfies the

8    exhaustion requirement under the PLRA.  *See id.* at § 3084.7(d)(3); *Harvey v. Jordan*, 605 F.3d

9    681, 683 (9th Cir. 2010).

10          Here Defendants Muniz, Medina, Hatton, Barela, and Mojica argue they are entitled to

11   summary judgment because Plaintiff only exhausted one grievance relating to his retaliation claim,

12   and that grievance—SVSP-L-14-00063—only concerned Plaintiff's allegations against Martella.

13   Plaintiff concedes that the only retaliation grievance he submitted that received a third-level

14   review was SVSP-L-14-00063.  Plaintiff contends, however, that this appeal should suffice to

15   exhaust his claims against all Defendants.  Plaintiff further contends that he exhausted his

16   administrative remedies as against Muniz when he attempted to submit staff complaints against

17   Muniz on March 16, 2014 and April 27, 2014.  The Court takes these contentions in reverse order.

18                    **1.    Defendant Muniz**

19          Defendants properly raise failure to exhaust in a Rule 56 motion for summary judgment

20   and argue that Plaintiff failed to properly exhaust available administrative remedies as to his

21   retaliation claims against Muniz before filing suit.  The record shows that no third-level grievance

22   was submitted regarding Plaintiff's claims against Muniz in this action.  The burden now shifts to

23   Plaintiff to provide evidence showing that "there is something in his particular case that made the

24   existing and generally available administrative remedies effectively unavailable to him."  *Albino*,

25   747 F.3d at 1172.

26          As noted above, Plaintiff submits in his FAC his own statement, under penalty of perjury,

27   that he attempted to submit staff complaints against Muniz on March 16, 2014 and April 27, 2014.

28   Plaintiff also submits his sworn statement that: (1) these complaints alleged retaliation by Muniz

United States District Court
Northern District of California

United States District Court
Northern District of California

in Muniz's processing of Plaintiff's inmate grievances; and (2) these complaints never received a response.  Under the law of the circuit, Plaintiff's sworn statement that he was thwarted from filing a 602 staff complaint against Muniz concerning the retaliation claims at issue meets his burden of production in showing that administrative remedies were not available to him.  *See Williams v. Paramo*, 775 F.3d 1182, 1191-92 (9th Cir. 2015) (plaintiff alleged under penalty of perjury that she first tried to inform correctional officer about safety concern, but that he did not help her and told her, "So what! That is not my problem! That is your problem!"; she then tried to file a grievance and an appeal with another correctional officer, who rejected the grievance and refused to file the appeal).  Defendants may not simply rely on the existence of an administrative review process (or claim that plaintiff's sworn allegations are false) to overcome such showing as they carry the ultimate burden of proof of failure to exhaust.  *See id.* at 1192.

Accordingly, the motion for summary judgment for failure to exhaust available administrative remedies is DENIED as to Defendant Muniz.

### 2.    Defendants Medina, Hatton, Barela, and Mojica

The Court next addresses whether SVSP-L-14-00063 (which Defendants concede exhausted administrative remedies as to Martella) and/or the attempted grievances against Muniz (which the Court has found satisfy the exhaustion requirement as to Muniz) were also sufficient to satisfy the exhaustion requirement as to Defendants Medina, Hatton, Barela, and Mojica.

"Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."  *See Woodford*, 548 U.S. at 89 (internal quotation marks omitted).  The grievance need not include every fact necessary to prove each element of an eventual legal claim. *Griffin*, 557 F.3d at 1120.  Nevertheless, as the purpose of a grievance is to alert the prison to a problem and facilitate its resolution, the grievance should include sufficient information "to allow prison officials to take appropriate responsive measures."  *Id.* at 1121 (finding no exhaustion where, unlike complaint filed in court, grievance complaining of upper-bunk assignment did not allege prison officials had disregarded nurse's order for lower-bunk assignment).

Here, in Appeal No. SVSP-L-14-00063, submitted by Plaintiff on December 30, 2013,

Plaintiff described his grievance as follows:

> Staff Service Analyst C. Martella RETALIATORY ACTS: tampering/destroying own STAFF COMPLAINT against her, including supporting documents and screen-out forms

Ochoa Decl. Ex. H.

> In the portion of the form directing Plaintiff to explain the issue, Plaintiff wrote:

> On 11/24/2013, I/M RODRIGUEZ [] submitted a group appeal to which I/M MARTINEZ [] (Appellant) is the first name in the group appeal, which allege(s) equal protection and cruel and unusual punishment violation(s) relating to modified program(s) (see attached) ON 12/09/2013, C. MARTELLA "cancelled" the group appeal stating "all I/M's signatories have either TX or agreed to withdraw the appeal" and you may not submit a "group STAFF COMPLAINT" . . . with the group appeal as a supporting document, alleging inter alia, C. MARTELLA routinely "creates/fabricates" reason(s) to screen out/cancel the group appeal. (see attached.)  On 12/16/2013 C. MARTELLA "REJECTS" the "group appeal" that was attached as a supporting document to the "STAFF COMPLAINT" on the grounds stated therein (id.) however, the cancellation of 12/9/2013, the entire STAFF COMPLAINT appeal, and the RIGHTS AND RESPONSIBILITY STATEMENT are missing!  Appellant alleges, after receiving the STAFF COMPLAINT, C. MARTELLA destroyed the above missing document(s) and attempted to conceal her retaliatory, illegal, criminal act(s) by issuing a "rejection" of 12/16/2013 to the "group appeal." (see id.)  Fortunately, I/M RODRIGUEZ and appellant made copies of everything prior to the STAFF COMPLAINT'S submission to the A.C. Office .  Defendant C. MARTELLA's retaliatory acts here against appellant (group I/M appeal) does NOT reasonably advance any legitimate correctional goals.

*Id.*

> Plaintiff attached to SVSP-L-14-00063 a copy of the group appeal, including the group's challenge to Martella's cancellation of the appeal and the staff complaint that had been filed in conjunction with that appeal.  *See id.*

> In the "Action Requested" portion of the form, Plaintiff stated:

> 1) Staff Service Analyst C. MARTELLA cease screening appellants appeals; 2) C. MARTELLA DOES NOT HANDLE OR PROCESS THIS APPEAL; 3) C. MARTELLA be permanently REMOVED from the appeals coordinators office; 4) The COMPLAINTS finding(s) be submitted to the local D.A.'s Office for prosecution under Cal. P.C. § 118.1 and other supporting law(s).

*Id.*

> In the complaint he attempted to submit against Muniz on March 16, 2014, Plaintiff described his grievance as follows: "Defendant WL Muniz thwarts the processing of staff misconduct 602's to shield/protect SVSP prison officials."  FAC at 67.

> In the portion of the form directing Plaintiff to explain the issue, Plaintiff wrote:

> Appellant alleges SVSP Hiring Authority Defendant WL Muniz [] has a habit, routine practice of intentionally obstructing the processing of appellants (I/M's) filed alleged staff misconduct 602s by processing them a different (but related) issue, then defendant WL Muniz "chills" appellants 1st Amendment right(s) by instructing appellant to file a second appeal re-alleging staff misconduct when it should be done with the first 602.  To wit: On 12/25/13 appellant filed a staff misconduct 602 against C/O Grady alleging retaliatory acts (SVSP-L-13-6735).  Defendant WL Muniz recategorized/processed this as "work incentive."  (Id.)  On 12/30/13, appellant filed a staff misconduct 602 against SSA C. Martella alleging improper screen-out, destroying documents (SVSP-L-14-0063).  Defendant WL Muniz processed it as a "process of appeals" appeal (SLR of 2/6/14 Id.)  Appellant alleges Defendant WL Muniz  as the HA thwarts the processing of appellants staff misconduct 602s in order to shield/protect prison officials from findings of misconduct being placed in CDC personnel files for 5 years (Cal. P.C. 148.6) an attempt to avoid this evidence from being discovered in "request for production of documents" from current/future lawsuits by appellant (and CDCR-SVSP inmates).

FAC at 67-69.

In the "Action Requested" portion of the form, Plaintiff stated:

> 1) Process the instant allegation of staff misconduct appeal as a staff misconduct appeal (category:7); 2) process appellants future allegations of staff misconduct appeals as staff misconduct appeals.

*Id.*

Plaintiff's April 27, 2014 attempted complaint submission against Muniz did not differ in any material respect from the March 16, 2014 attempted complaint submission.  *See* FAC at 76-80.

Having considered the arguments and evidence submitted by the parties, the Court concludes that SVSP-L-14-00063 and the attempted grievances against Muniz did not provide SVSP prison officials with sufficient information to put them on notice that Plaintiff was asserting retaliation claims against Defendants Medina, Hatton, Barela, and Mojica.  Plaintiff's administrative grievances served only to notify prison officials of the specific concerns Plaintiff had regarding Martella and Muniz processing his appeals.  Plaintiff cites to *Sapp*, 623 F.3d at 824, and argues that the PLRA does not require a prisoner to specifically name all responsible parties in his grievance where the prison's own regulations do not require it.  However, California amended its regulations in 2011 and now requires that to grieve an issue against an individual, the inmate must "list all staff member(s) involved and [] describe their involvement in the issue."  *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3).  In any event, here, Plaintiff not only failed to identify

United States District Court
Northern District of California

1  Defendants Medina, Hatton, Barela, and Mojica by name, but he never identified any instances of

2  alleged misconduct, let alone retaliation, by these Defendants.  Because Plaintiff's grievances and

3  attempted grievances did not submit for review the question of whether Plaintiff had been

4  subjected to retaliation by Defendants Medina, Hatton, Barela, and Mojica, the grievances and

5  attempted grievances did not "allow prison officials to take appropriate responsive measures."  *See*

6  *Griffin*, 557 F.3d at 1121.

7       Accordingly, Defendants Medina, Hatton, Barela, and Mojica are entitled to summary

8  judgment.

9       **C.**     **Merits of Retaliation Claim**

10       Retaliation by a state actor for the exercise of a constitutional right is actionable under

11  § 1983.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977).  "Within

12  the prison context, a viable claim of First Amendment retaliation entails five basic elements:

13  (1) An assertion that a state actor took some adverse action against an inmate (2) because of

14  (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

15  First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

16  goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

17       Prisoners may not be retaliated against for exercising their right of access to the courts.

18  *See Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).  This constitutional prohibition

19  clearly includes retaliation for filing a complaint.  *See Sorrano's Gasco*, 874 F.2d 1310, 1314 (9th

20  Cir. 1989).  The right of access to the courts extends to established prison grievance procedures.

21  *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) *overruled on other grounds by Shaw v.

22  Murphy*, 532 U.S. 223, 230, n.2 (2001).  Thus, a prisoner may not be retaliated against for using

23  such procedures.  *See Rhodes*, 408 F.3d at 567.

24       The prisoner must show that the type of activity he was engaged in was constitutionally

25  protected, that the protected conduct was a substantial or motivating factor for the alleged

26  retaliatory action, and that the retaliatory action advanced no legitimate penological interest.

27  *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997).   Mere speculation that defendants acted

28  out of retaliation is not sufficient.  *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases)

(affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'"  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Id.* (quoting *Sandin*, 515 U.S. at 482).

### 1.    Connection to Protected Activity

Defendants argue that they are entitled to summary judgment on the merits of Plaintiff's retaliation claim because Plaintiff cannot show that the grievance screenings were the result of any protected activity by Plaintiff.   The Court agrees there is an absence of evidence of a causal connection between the protected conduct and the adverse action as to the first several screen-outs: SVSP-L-13-05291, SVSP-L-13-06278, SVSP-L-13-6387, SVSP-L-14-00034, SVSP-L-13-6738, and SVSP-L-14-00063.  Specifically, there is no evidence that the initial screening or any other handling of these grievances bore any connection to plaintiff's earlier lawsuits or grievances.  Indeed, there is no evidence that Martella and/or Muniz knew of plaintiff's lawsuits or of his prior grievances.[2]  *See Wood*, 753 F.3d at 904 (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Indeed, Plaintiff concedes that screen-outs, when a grievance is cancelled or rejected before the first level of review, were common even in cases where he was not personally filing the grievance.  The group appeal as initially submitted by Inmate Rodriguez, SVSP-L-14-00034, is

---

[2] The record shows that Martella did not become SSA until May 31, 2013.  Martella Decl. ¶ 1.  Muniz's only involvement with screening grievances was as a designee permitted to categorize grievances as staff complaints, starting in December 2012.  *See* Muniz Decl. ¶ 1; Dkt. No. 91-3 at 22, 33.

United States District Court
Northern District of California

United States District Court
Northern District of California

one such example.  Plaintiff also submits declarations from two other inmates describing grievances they had filed that were rejected for purportedly fabricated reasons.  *See* Dkt. Nos. 93, 94.  One, Inmate Cole, states: "I myself have had every 602 I've filed screened out by the appeals coordinator's office and staff, including Martella."  Dkt. No. 93.  The other, Inmate Chavez, states: "Every time I put in the 602, C. Martella screen[s] me out for bogus reasons I don't have to go threw [sic]."  Dkt. No. 94.[3]  Thus Plaintiff's own evidence shows that cancellation and screening-out of grievances was a common practice that would have occurred regardless of any retaliatory animus.  *See Hartman v. Moore*, 547 U.S. 250, 259 (2006) ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").[4]

However, Plaintiff does present evidence that after a certain point, he had filed so many grievances that the appeals office began destroying or intentionally "losing" his grievances altogether.  Specifically, Plaintiff presents evidence that SVSP-L-14-01067, his staff complaint against Grady; SVSP-L-14-01842, his first staff complaint against Muniz; Plaintiff's April 27, 2014 submission, his second staff complaint against Muniz; and Plaintiff's April 30, 2014 grievance about Johnson were never processed at all.  A defendant's intent to inhibit the exercise of First Amendment rights is an element of a retaliation claim.  *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).  Such intent may be shown through either direct or circumstantial evidence.  *See Allen v. Iranon*, 283 F.3d 1070, 1074-75 (9th Cir.

---

[3] Defendants' evidentiary objections to the declarations of Inmate Cole and Inmate Chavez are OVERRULED to the extent these inmates are testifying to their own personal experiences with the SVSP appeals office.  The parties remaining evidentiary objections are OVERRULED as moot because the evidence challenged is not pertinent to the Court's analysis.

[4] In its Order of Service, the Court found no stand-alone claim for interference with the grievance process because there is no right to a prison grievance system.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (states may establish grievance procedures for inmates to follow, but they are not constitutionally required to do so); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (prison officials failure to process grievances does not state due process claim).  The retaliation claim was nonetheless found cognizable because a plaintiff need not show that the retaliatory action independently deprived him of a constitutional right.  *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns.").

1    2002); *Mendocino*, 192 F.3d at 1300-01.  Making all inferences in Plaintiff's favor, Plaintiff's

2    evidence that certain grievances were intentionally lost or destroyed is sufficient for a reasonable

3    jury to find retaliation for Plaintiff's filing of a large number of earlier grievances.  By the time

4    Plaintiff submitted grievance no. SVSP-L-14-01067, Martella had been screening Plaintiff's

5    grievances for almost nine months and knew of his specific complaints against her.  While she had

6    always at least responded to his earlier grievances, there is a factual dispute as to whether she

7    processed the latter ones at all.  *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003)

8    (retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency

9    with previous actions, as well as direct evidence).

10        Defendants argue that: (1) Plaintiff's rights were not chilled because he was able to re-

11   submit the grievances; (2) the reasons for the screen-outs advanced a legitimate penological goal;

12   and (3) Plaintiff suffered no injury because the grievances were accepted for processing.  These

13   arguments are not applicable to SVSP-L-14-01067, SVSP-L-14-01842, Plaintiff's April 27, 2014

14   submission, and Plaintiff's April 30, 2014 submission—where there is a factual dispute as to

15   whether the grievances were processed at all.  Further, with respect to the chilling of Plaintiff's

16   rights, the proper inquiry is "whether an official's acts would chill *or* silence a person of ordinary

17   firmness from future First Amendment activities."  *Rhodes*, 408 F.3d at 568.  Defendants argue

18   that Plaintiff does not show a chilling effect because he continued to pursue prison grievances.

19   The fact that Plaintiff continued to file inmate appeals does not negate the existence of this

20   element because the chilling effect need not be so great as to totally silence the inmate.  *See*

21   *Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate failed to state retaliation claim where,

22   after alleged adverse action, plaintiff nonetheless had been able to file inmate grievances and

23   lawsuit).

24                          **2.      Connection to Muniz**

25        Defendants argue that Plaintiff suffered no adverse action from Muniz because Muniz was

26   not involved in the screening or processing of the inmate grievances and Form 22s at issue in this

27   action.  For the reasons discussed above, the Court need only review whether Muniz was involved

28   in the screening or processing of SVSP-L-14-01067, SVSP-L-14-01842, Plaintiff's April 27, 2014

1    submission, Plaintiff's April 30, 2014 submission, and/or any Form 22s connected to these

2    grievances and submissions.

3        A person deprives another of a constitutional right within the meaning of § 1983 if he does

4    an affirmative act, participates in another's affirmative act or omits to perform an act, which he is

5    legally required to do, that causes the deprivation of which the plaintiff complains. *See Leer v.*

6    *Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The inquiry into causation must be individualized and

7    focus on the duties and responsibilities of each individual defendant whose acts or omissions are

8    alleged to have caused a constitutional deprivation. *Id.* To defeat summary judgment, sweeping

9    conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each

10   individual defendant's" actions which violated his or her rights. *Id.* at 634.

11       Here, Plaintiff has submitted evidence that, during the time of the grievances and

12   submissions at issue, Muniz was chief deputy warden of SVSP. Dkt. No. 91-3 at 22. As chief

13   deputy warden, he was one of the officials designated to review and categorize inmate grievances

14   as staff complaints. Dkt. No. 91-3 at 33. *See* Cal. Code Regs. tit. 15, § 3084.9(i)(1). Because

15   SVSP-L-14-01067, SVSP-L-14-01842, Plaintiff's April 27, 2014 submission, and Plaintiff's April

16   30, 2014 submission all alleged staff misconduct, Plaintiff has submitted sufficient evidence

17   (making all inferences in his favor at this stage) on which a reasonable jury could find that Muniz

18   was involved in the initial processing of these grievances and submissions.

19                              **3.      Qualified Immunity**

20       Defendants contend they nonetheless are entitled to judgment, based on qualified

21   immunity. The defense of qualified immunity protects "government officials . . . from liability for

22   civil damages insofar as their conduct does not violate clearly established statutory or

23   constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

24   U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine

25   (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and

26   (2) whether such right was clearly established such that it would be clear to a reasonable officer

27   that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223,

28   232, 236 (2009) (overruling requirement in *Saucier v. Katz*, 533 U.S. 194 (2001), that court ruling

United States District Court
Northern District of California

1    on qualified immunity claim consider first prong of test before addressing second prong).  The

2    court may exercise its discretion in deciding which prong to address first.  *Id.*

3         Here, the same factual disputes that preclude summary judgment on the retaliation claim

4    preclude summary judgment on the qualified immunity defense because Martella and Muniz

5    would not be entitled to qualified immunity under Plaintiff's version of the facts, which asserts a

6    deliberate act of retaliation.  *See CarePartners, LLC v. Lashway*, 545 F.3d 867, 883 (9th Cir.

7    2008) (law has been clearly established since at least 1989 that "it is unlawful for the government

8    to deliberately retaliate against a citizen for exercising his right to comment on (and publicly

9    criticize) government officials' actions and his right to access the courts and administrative appeals

10    process for redress of grievances").  Consequently, Defendants are not entitled to qualified

11    immunity.

### CONCLUSION

12

13         For the foregoing reasons, the Court orders as follows:

14         1.  Defendants' motion to dismiss the official capacity claims is GRANTED.  Plaintiff's

15    official capacity claims for money damages are dismissed with prejudice as to all Defendants.

16         2.  Defendants' motion for summary judgment is hereby GRANTED IN PART and

17    DENIED IN PART as follows:

18         a.  Summary judgment is GRANTED in favor of Defendants Medina, Hatton,

19    Barela, and Mojica on all claims.  The Clerk shall terminate these Defendants from the docket in

20    this action.

21         b.  Summary judgment is GRANTED as to Defendants Muniz and Martella on the

22    retaliation claims arising out of SVSP-L-13-05291, SVSP-L-13-06278, SVSP-L-13-6387, SVSP-

23    L-14-00034, SVSP-L-13-6738, and SVSP-L-14-00063.

24         c.  Summary judgment is DENIED as to Defendants Muniz and Martella on the

25    retaliation claims arising out of SVSP-L-14-01067, SVSP-L-14-01842, Plaintiff's April 27, 2014

26    submission, and Plaintiff's April 30, 2014 submission.

27         3.  The surviving retaliation claims against Defendants Muniz and Martella are hereby

28    REFERRED to Magistrate Judge Nandor Vadas pursuant to the Pro Se Prisoner Settlement

Program for settlement proceedings.  Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time, and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk shall send Magistrate Judge Vadas a copy of this order.

4.  The case is STAYED pending the settlement proceedings.  The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.

This order terminates Docket No. 62.

**IT IS SO ORDERED.**

Dated:  6/10/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge